3-16-0132 People of the State of Illinois, Appalachians by Stephanie Raymond and Williams, Appalachians by David Please proceed Good afternoon. May it please the Court, I am Jay Wigman, an Assistant Appellate Defender with the Office of the State Appellate Defender, Counsel for Defendant Appellant Bob Williams, who asserts that the circuit court erred when it denied the defendant's motion to dismiss, which was based on the grounds that the Kewaunee City Officer was without authority to arrest the defendant in an unincorporated area for an offense that happened outside Kewaunee City limits for the following two reasons, both of which are two partners. First, the officer was without authority under either the Municipalities Code or the Criminal Code to conduct a Terry stop to investigate a purported offense that occurred outside the officer's jurisdiction. First, because, and related to the Municipalities Code, the defendant was not arrested in an adjoining municipality, but instead was arrested in an unincorporated area of Henry County. And second, the officer had no personal knowledge of the offense. Secondly, the defendant asserts that the court had no personal knowledge of the offense. The court wrongly concluded that the officer could investigate a misdemeanor offense, both because the witness's personal knowledge does not equate to the officer's personal knowledge, and because there was no reasonable basis to believe that the section the court cited, Section 402 of the Traffic Code, had been violated. The facts of this case are fairly brief and fairly straightforward. I will focus a little bit more than usual on the procedure involving the trial court's hearing of the motion to dismiss and its rulings thereof. Just outside the city limits of Kewaunee, a truck crashed into a guardrail. Two nearby residents drove from their homes toward the sound of the crash. The first one there saw a man standing next to the driver's side door. She did not see the man in the car. The man left. Lieutenant Riverd was the first officer on the scene. He found the car, talked to witnesses, and broadcast information on police radio. Officer Welgatt, who testified that the accident occurred outside city limits, was dispatched to the accident. He headed then in the same direction that the truck was pointed, which was out of town and into the country. Driving about a half mile into the country, Officer Welgatt spotted the defendant and stopped and questioned him. The defendant refused medical treatment and tried to leave, at which point the two officers arrested him. On him they found contraband. He was arrested for DUI as well. At the close of evidence, the defendant moved to dismiss for lack of jurisdiction. The court said that police can arrest anybody in the state of Illinois, purportedly relying upon Section 747 of the Municipalities Code. The court did direct out the allegation of failure to report an accident. The court found specifically that the accident occurred outside city limits, but found that the statute required that the defendant report to the sheriff or to the state police, and that there had been no evidence as to a failure of this to happen. The defendant was then found guilty of DUI, possession of paraphernalia, and possession of marijuana, failure to wear a seat belt, and to reduce his speed. The defense counsel then filed a written motion to dismiss, incorporated as part of the post-trial motions, and alleged specifically that the arrest was improper by the police because it was outside of their jurisdiction. The defendant argued that Section 747, which allows arrests throughout the state by officers under certain circumstances, does not include unincorporated areas within the definition of police districts, which require that the municipalities be adjoining. It's in the country. It's not as if it's Elgin to Geneva or connecting cities. The defendant also argued that a citizen's arrest was not appropriate because the trappings of the police officer were used, and that the officer, again, had no personal knowledge of the accident. In response, the state presented both a map and a to whom it may concern letter. The letter stated that the two officers, specifically Officer Riverd and Officer Welgat, had been at some time in the past deputized by Henry County. And the map purportedly indicated that the accident occurred within municipal limits. I will say that the map and agonization agreement were from 30 years prior and showed only the city limits of the municipality, did not show the location of the car. The judge claimed that the witness statements gave the officers personal knowledge of the events and thus gave them probable cause to investigate the specific allegation of 402, which is failure to report an accident involving another car. The court specifically stated that it was not considering the state's arguments because it was unnecessary to consider either the map or the letter regarding deputization. Given these facts, given the procedure followed by the court in its rulings, the defendant now asserts that the circuit court erred because the officer, first of all, was not personally aware of the accident. He did not see the defendant in the truck, and more specifically, the witnesses who relayed what they knew to the officer had not seen the defendant in the truck. Even if they had, the case law is clear and contrary specifically that the witness's knowledge would not suffice as personal knowledge, but they themselves did not possess it. Secondly, the defendant notes that this section related to damage to another car was not violated by the defendant and there was no evidence involving another car. It was simply property of another and for that reason did not qualify as an offense that might have justified the search by the officers. An officer may conduct a Terry stop outside his jurisdiction, again, if there are adjoining municipalities or under five, I'm sorry, four certain circumstances that are set forth both within the statute and applicable to this case in the cases of People v. Contreras and People v. Curbalitis. Under those four specific scenarios and one other which is suggested by case law, officers are allowed to go outside of their own jurisdiction and either investigate or as in this case conduct a Terry stop if one of the four following circumstances are presented. First, if the officer is engaged in the investigation of criminal activity that occurred in the officer's primary jurisdiction and the temporary questioning or arrest relates to, arises from, or is conducted pursuant to that investigation. Again, the evidence here that was presented in the trial court, accepted by the trial court, clearly indicates that this accident did not happen within the Kiwanee city limits within the officer's primary jurisdiction. As such, the officer was without authority to go outside of the jurisdiction to investigate. Second, if the officer while on duty as a peace officer becomes personally aware of the immediate commission of a felony or misdemeanor violation of the laws of this state, then the officer may venture into the next jurisdiction. The trial court was plainly wrong when it stated that the officers could use the witness's personal knowledge. Contreras specifically notes the use of the language within the statute and notes that personal knowledge is required. In Contreras specifically, other officers told the arresting officer that they had seen something that clearly suggested a buy of illegal drugs. The court found that it wasn't sufficient that the officer was relying on the reporting officers and therefore the officer did not have authority to arrest the defendant in Contreras. Nor did the officers have authority here. Secondly, as regards to this specific subsection of 107-4A3, the witnesses again did not have personal knowledge that the defendant drove the truck. And again, there was no probable cause to believe that the defendant committed the offense that the court said would justify a stop under these circumstances. The third subsection within 107-4A3 is as follows. If the officer, while on duty as a peace officer, is requested by an appropriate state or local law enforcement official to render aid or assistance to the requesting law enforcement agency that is outside the officer's primary jurisdiction. Again, that request wasn't made in the instant case. There was no request of the officer to participate in the investigation by the adjoining county. And therefore, that does not apply. The fourth section doesn't apply either. Very simply stated, it relates to a pilot program regarding cyber gangs and has no bearing on this case. The fifth reason, and this isn't part of the statute, but part of case law is where a citizen's arrest is conducted. But again, there was no personal knowledge by the officer here. And the officer isn't entitled to use the trappings of his office to effectuate a citizen's arrest. Here, there were several of those, most specifically the communications. And if it wasn't Contreras, it was Curvelitis that said that the police radio is sufficiently a trapping of the office to disqualify it as a matter of a citizen's arrest. Notably, nowhere within any of these specific sections is there any discussion of deputization of officers, which is one of the reasons that the state has an almost post facto justification used in this case. There's nothing to indicate that a deputization, particularly one that if it didn't expire in the past, it only existed in the past, doesn't provide a basis for the officer to continue his jurisdiction. And part of that argument comes from the cases which indicate that where an officer sees something in another district, if he's working as a peace officer at that time, is entitled to, if he personally sees something, act upon it. Here, there is nothing to indicate that this deputization was an open-ended matter, that it could apply at any time. And in fact, there are several policy reasons that would suggest that the municipalities themselves wouldn't necessarily want an officer stepping in simply because of a past deputization. There's nothing to indicate that this is something that can be open-ended. I would note that the third subsection of 107-483 suggests an answer that somewhat relates to that type of policy and would have solved the situation in the incident case, and that is that the jurisdiction into which the officer ventured could have requested the assistance of the officer. And as a matter of practice, what police can do is notify the agency, in this case Henry County, and say, something just happened. We think it's coming into your county. Do you want us to assist? I'm half a mile away. I can go check. But that wasn't done here. Instead, the officer acted without authority, ventured into an area in which the offense committed, not based on any personal knowledge, and ignoring the fact that, in fact, the offense occurred outside of the officer's jurisdiction. Because the officer was without authority and lacked personal knowledge, if the Court has no further questions, I would conclude by asking that the defendant's convictions be reversed. Thank you. Thank you, Counsel. May it please the Court, Your Honors, Counsel. My name is Stephanie Raymond. I represent the people of the State of Illinois in this matter. It is the people's position that the trial judge did not err in denying the defendant's motion to dismiss where an extraterritorial arrest did not occur. As Counsel pointed out during the motion to dismiss in the State's response, they attached to that response a map of the area and an annexation agreement that stated that the area in question was part of the Kiwanee city limits. In addition, they did attach the letter from the Henry County Sheriff's Department stating that five months prior, Officer Welgott had been deputized by the Henry County Sheriff's Department and that that status had not been revoked. Here, Officer Welgott was dispatched to the area by the Kiwanee Police Department. Once the dispatch informed him that a person was seen leaving the scene of the accident wearing jeans and a navy blue T-shirt, he then arrived at the accident location with this information and informed the other officer that he was going to try to go locate the individual that had been seen walking away. He traveled less than a half a mile up the road where he came in contact with a defendant who was exhibiting signs such as glassy, watery eyes. He was not cooperative and eventually he arrested him for driving under the influence. It's the people's position that pursuant to the annexation agreement and to the fact that he was deputized by the Henry County Sheriff's Department that he arrested within his jurisdiction. What was the deputization for? At five months prior, he had participated in certain SWAT teams, I believe, and training and things of that nature for the Henry County Sheriff's Department. Was there something about that letter that made it an open-ended deputization? Not necessarily, just other than the fact that his status had not been revoked at that point. But the purpose had ended? No, the letter stated that he had been deputized prior for this incident and that, I mean, for the training or whatever, and that it had not been revoked. So it's the people's position that it was still active. Was the training still going on? No, the training was completed. So the purpose for which he was deputized was over? I mean, I guess I would say, I would just again say that his status hadn't been revoked at that point. So, I mean, the letter stated that there was this training that occurred, the training was over. So, I mean, essentially the reason he was deputized, I guess, was over, but his status was still active. Based on what you say then, that the status was still active, it was for a specific purpose and the purpose was done? Just that the letter stated that his status as a deputy had not been revoked. That's all. The annexation agreement, it just talks about there being, that there not being an evidentiary hearing. Was it admitted who laid the foundation? It was just that the people attached to their respondent, you know, defendant filed a motion to dismiss based on this. They responded by attaching, you know, arguing that this was not an extraterritorial arrest, and in support of that, they attached this agreement, which included a map, and then the letter from the Henry County deputies, or Henry County Sheriff's Department. So, the trial judge does make mention of it in that he, I believe he states that had there been an evidentiary hearing, he would find that these things, you know, meant that there was not an extraterritorial arrest, but it, I mean, it was part of the record. So, he also commented. But it's not, it wasn't the ordinance. It was the annexation agreement. It wasn't the ordinance, which would fulfill the agreement, would actually do the annexation. I mean, the agreement doesn't annex the property. The agreement has to be, you know, there has to be an ordinance voted on by the county board. So, that, I mean, that there was no hearing, and all there is is the agreement, correct? But there's just the agreement, the map of the area of where this accident occurred. So, the trial judge does mention, as counsel mentioned, Section 107.4, and he mentions that as something in addition to when he states, Well, I appreciate the parties have both provided the court with substantial case law, statutory law, and additional evidentiary matters that were not brought forth at the time of the trial, especially regarding the annexation and deputization of the two officers. I think we also have the Code of Criminal Procedure, 725 ILCS 5-107.4. So, it's the people's position that that was just an additional thing that he based his decision on. It's the judgment of the trial court that this court reviews, and not his reasoning. Just a quick note about the sections that defendant, or that defendant violated. Section 11-104, that deals with when the car, when a vehicle gets into an accident with other property, which is the case here. Defendant was cited for that section. He did violate that section. So, the fact that defendant says that the trial judge erred in finding that a misdemeanor had occurred is also not correct, because several misdemeanors occurred, that being one of them. So, again, this court can affirm on any basis in the record, and it's the people's position that defendant violated that section, and the trial court properly found that a misdemeanor had been committed. I have one more question about the annexation agreement. I think Mr. Wegman said that it had been enacted 30 years earlier, is that correct? That is correct. Were there any boundary changes? Not that the people are aware of. It was just this, yeah, it was a 30-year-old document. So, if there are no more questions. Counsel, you may proceed. Very briefly, I'd like to first address a question by Justice McDade regarding the termination or the active period of the deputization. Not only is there no indication that the deputization was still at issue or something that was going, but the statute itself, and I refer to 107-4A3, seems to suggest that the timelines are limited to the active investigation. There are specific references within that entire section that refer to the immediate offense, which implies that when the assistance is requested by, in this instance, Henry County, that it has to be for this specific purpose, that it can't simply be an overreaching and open-ended set of assistance required and presented by the officers. So, to that extent, I don't believe that it can be allowed to be something that merely is an open-ended matter. And the court noted that it did not conduct an evidentiary hearing. It did not investigate this letter. It didn't ask the questions that we would like to have answered. It was a, to whom it may concern, letter from the sheriff, related specifically to Officers Welgatt and Riverd. But it was hearsay. It was not part of the evidence. It may have been presented and attached by the state, but it didn't become part of the case. Similarly, the map. When you become a deputy for training, the statute doesn't refer to, the statute doesn't say it's ongoing until revoked. And there's no legal principle that there has to be a revocation. Not in terms of deputization for the primary jurisdiction. What I have not been able to find any sort of case law or even real statute pertaining to is this instance where it's an officer from an outside jurisdiction. My knowledge of deputization, frankly, is limited to Western movies. Here, in this case, there is no indication that, and the state didn't present anything. It really doesn't. And there is nothing to indicate that, and the state certainly hasn't propounded anything that says that it can be open-ended like this. I can't imagine that we're actually working in a world where officers who at one time assisted with an arrest or underwent training or participated in the Black Hawk Task Force can now wander freely around Henry County outside of their own jurisdiction. And it certainly violates the principles and the reason for limiting jurisdiction to the voting jurisdiction that somebody is in. The police officers are not going to be accountable to the citizens of Henry County the way they are to the city of Kewanee. And that's just one reason why an officer shouldn't be allowed to range outside of his own jurisdiction, which clearly is what occurred here. Regarding the use of 404, it's somewhat of a non-issue. If this court were to find that the accident occurred within the jurisdiction, then my argument would end. If this court finds, as did the trial court and as the officer testified, that the accident occurred outside the jurisdiction of Kewanee, then the question ends because the officer is acting outside of his jurisdiction and wouldn't be able to enforce this violation of 404 as it's set forth in 107-4. So for all of those reasons, if there are no further questions, I would conclude by asking that this court reverse the convictions of the defendant. Thank you both for your arguments. The court will take this under advisement and under decision.